The Honorable Johnnie J. Roebuck State Representative Post Office Box 533 Arkadelphia, Arkansas 71923-0533
Dear Representative Roebuck:
I am writing in response to your request for my opinion on the following questions:
 1. Are state-supported institutions of higher education subject to the requirements of the Uniform Classification and Compensation Act with respect to the following for nonclassified employees, whether faculty or nonfaculty: a) maximum salary levels; and b) pay increases?
 2. Are state-supported institutions of higher education required to abide by the state's suspension of pay increases for nonclassified employees, whether faculty or nonfaculty, including: a) cost-of-living adjustments; b) merit increases; c) career service recognition awards; and d) bonuses or increases for retention purposes?
 3. Are state-supported institutions of higher education prohibited from giving any type of pay increase for fiscal year 2011 for nonclassified employees, whether faculty or nonfaculty? If so, are pay increases legal that were given to certain faculty, including pay increases for retention, before the date of the Weiss memo [suspending pay increases]? *Page 2 
You have further offered the following background summary:
 The Department of Finance and Administration (DFA) announced on May 26, 2010, that cost-of-living adjustments, merit increases, and annual career service recognitions for classified and nonclassified state employees are suspended until further review in January 2011. . . .
 Some state-supported institutions of higher education have publicly stated that they do not agree that the DFA may exercise that authority over the institutions with regard to the compensation of nonclassified employees, citing Amendment 33 to the state's constitution. Other state-supported institutions of higher education have already given raises to some faculty in order to retain those faculty members.
With respect to this dispute, you suggest that this office has previously opined (1) that the employees of state-supported institutions of higher learning are employees of the state and (2) that Amendment 33 does not restrict the legislature from establishing what you term a "classification and compensation plan for higher education employees."[1] You further point to various items of legislation in support of the proposition that "the General Assembly has clearly established its authority over the salaries of nonclassified higher education employees."
RESPONSE
In my opinion, the answer to your first question is "no." The Uniform Classification and Compensation Act (the "UCCA"), A.C.A. §§ 21-5-201 through-225, generally applies only to classified employees. Although A.C.A. § 21-5-219 does address nonclassified employees, this section was enacted subsequent to the rest of the subchapter, and it is questionable whether the conditions of the subchapter apply to this section. See A.C.R.C. Note to A.C.A. § 21-5-219 (Repl. 2004). Moreover, nonclassified employees at institutions of higher education were stricken from the scope of A.C.A. § 21-5-219 pursuant to Act 688 of 2009. It is unclear whether this amendment was intended to acknowledge some degree of *Page 3 
autonomy in university boards pursuant to Amendment 33. I believe the answer to your second question is in all likelihood likewise "no." Although the Weiss Memorandum is not entirely clear in its scope, it was apparently intended to freeze any form of salary adjustment, including the four categories you have listed, pending a review of the state's economic performance during the first half of fiscal year 2011. Pursuant to A.C.A. § 21-5-211, the Director of the Department of Finance and Administration is indeed generally authorized to impose such a freeze on the use of public funds if two conditions are met: (1) he determines that general revenues will not prove adequate to fund the salary increases; and (2) the Governor concurs. However his authority to impose such a freeze is limited to the covered employees of institutions subject to the UCCA — a category that does not include the nonclassified employees of institutions of higher education. See
A.C.A. § 21-5-203(9)(B) (defining a state "employee" subject to the UCCA as limited to classified employees). In my opinion, for the reasons just stated, the answer to the first part of your third question is "no" and the answer to the second part is "yes." It is my understanding, however, that state-supported institutions of higher education have voluntarily agreed to avoid awarding salary increases for fiscal year 2011.
Question 1: Are state-supported institutions of highereducation subject to the requirements of the Uniform Classificationand Compensation Act with respect to the following for nonclassifiedemployees, whether faculty or nonfaculty: a) maximum salary levels;and b) pay increases?
In my opinion, as reflected in my response above, I believe the answer to this question is "no." The Uniform Classification and Compensation Act (the "UCCA")[2] and the Higher Education Expenditure Restriction Act (the "HEERA")[3] mark the legislature's exercise of control over salaries paid employees of state-supported institutions of higher learning. This legislation is in all respects consistent with the provisions of Ark. Const. art. 16, § 4, which charges the General Assembly with fixing the salaries of state employees.
As its name implies, the HEERA, which is designed to restrict expenditures at state-supported institutions of higher learning, directly limits salaries to be paid at such institutions. As you suggest in your request, the legislature has both asserted *Page 4 
and exercised authority to dictate the salaries of nonclassified employees of state-funded institutions of higher learning.[4]See A.C.A. § 6-63-302 (Repl. 2003) (providing that the HEERA will apply to "all publicly supported institutions of higher education in this state"). This statute further provides that HEERA "shall not supersede the provisions of . . . the Uniform Classification and Compensation Act." However, the fact that the UCCA continues to apply generally to institutions of higher education does not resolve whether it applies tononclassified employees of such institutions.
State-supported institutions of higher learning have in the past been expressly excluded from the provisions of the UCCA.See Ark. Op. Att'y Gen. No. 88-302 (invoking this exclusion, set forth in then A.C.A. § 21-5-204(a)(5), in support of the conclusion that the University of Arkansas was not subject to the UCCA). This former statutory provision was stricken pursuant to Acts 1989, No. 793, § 3, which removed from the exceptions set forth in A.C.A. § 21-5-204 the former exemption for "[a]ll state supported institutions of higher learning." However,Act 688 of 2009 amended A.C.A. § 21-5-219 to remove from the definition of employees subject to the UCCA what was formerly an express reference to nonclassified employees at institutions of higher education.[5] In my opinion, this *Page 5 
amendment merely acknowledges that nonclassified employees at such institutions are not subject to the UCCA — a conclusion strongly reinforced by the fact that A.C.A. § 21-5-203(9)(B) expressly defines the term "employee" under the UCCA as applying only to classified employees.
Question 2: Are state-supported institutions of highereducation required to abide by the state's suspension of payincreases for nonclassified employees, whether faculty ornonfaculty, including: a) cost-of-living adjustments; b) meritincreases; c) career service recognition awards; and d) bonuses orincreases for retention purposes?
In my opinion, given that the freeze on salaries was imposed pursuant to the UCCA, which I have concluded above does not apply to nonclassified employees of institutions of higher education, the answer to this question is in all likelihood "no." I should note, however, that these institutions have apparently agreed voluntarily to abide by the suspension decision.
The memorandum that prompted your question (the "Memorandum") was issued by DFA Director Richard Weiss. The Memorandum provides as follows:
 Based on the authority vested in the Chief Fiscal Officer of the State pursuant to Arkansas Code 21-5-211 and Act 688 of 2009 in its entirety, the following procedures for the 2011 fiscal year shall apply:
 The pay plans will remain the same as Fiscal Year 2010. Due to the official forecast of general revenues for the fiscal year 2011, it has been determined that the FY2011 2.3% cost of living adjustments (COLA) will be suspended at this time. The 2.3% COLA will not be applied to employees' June 30, 2010 salaries.
 Also, annual career service recognition payments and classified and unclassified employee merit increases will be suspended for 2011. However, performance evaluations must be completed on all employees. *Page 6 
 If the economy has improved after the first two quarters of FY2011, all of these decisions will be revisited.
(Emphasis in original.)
In the Memorandum, the DFA Director, acting in his capacity as the state's chief fiscal officer, purports to freeze during the first six months of fiscal year 2011 all cost-of-living adjustments ("COLA"), all merit increases and all career service recognition payments for state employees, including nonclassified employees at state-supported institutions of higher learning. This list covers only the first three items listed in your question. However, the Memorandum may be read more broadly in its direction that "the pay plans" — a coinage whose exact scope is unclear — "will remain the same as Fiscal Year 2010." This mandate might be read as imposing an across-the-board freeze on compensation of any sort, although it is unclear, if this were what the Director intended, why the Memorandum proceeds to itemize three specific categories of payment as subject to a freeze. Despite this ambiguity, my inquiries reveal that the Director indeed intended to impose an across-the-board freeze, which is in all respects consistent with what you apparently read the Memorandum as designed to do. In accordance with subsection (2) of A.C.A. § 25-12-211(e), he has further expressed his intention to lift the freeze on the increases recited in the Memorandum in six months, possibly retroactively, if economic circumstances warrant. The crucial question, then, is whether the Director was authorized to impose this freeze, particularly in light of the fact that the mandate includes a provision suspending a 2.3% COLA that has been expressly approved by the legislature.[6] *Page 7 
As suggested above, specifically with respect to a salary freeze applicable to nonclassified employees of state-supported institutions of higher education, I believe the provisions ofAct 688 of 2009, amending A.C.A. § 21-5-219, would call into question the Director's authority to impose an across-the-board freeze of salary increases in institutions of higher education based upon a provision in a subchapter of the Code that quite likely does not apply to nonclassified employees of such institutions.
Moreover, with respect to the disposition of private endowment funds, Amendment 33 might well restrict the Director's authority to restrict a university board's discretion to disperse such funds. Notwithstanding the fact that an institution of higher education receives public funds, I consider it problematic to suggest that a state official not associated with a university could dictate what the university does with its private endowments. Amendment 33 provides the board of trustees of an institution of higher learning, absent the abolishment of the institution or its consolidation with another state institution, with autonomy to exercise "powers vested" in the board.[7] As reflected in the attached Ark. Op. Att'y Gen. No. 2007-007, it is far from obvious what might constitute a "power vested" in a board of trustees. In Ark. Op. Att'y Gen. No. 2007-007, I summarized as follows my predecessor's conclusions on this issue:
 [A]fter noting the complete absence of case law addressing this issue, my predecessor opined that a power might be deemed to have "vested" in a university board (1) if the board has traditionally exercised the power and (2) if the power involves the making of substantive policy. While I must stress again that this standard has *Page 8 
not been judicially adopted, I find it consistent with the ordinary-language sense of the term "vest" and with Amendment 33's focus on preserving established institutional prerogatives whose exercise advances the institution's mission.
I continue to subscribe to this opinion. Applying it to your specific request, I question whether a university's authority to dispense non-public funds in whatever manner it deems appropriate should be deemed anything other than "vested." In this regard, I should point out the terms of A.C.A. § 21-5-211(e)(1), which provides as follows:
 If the Chief Fiscal Officer of the State determines that general revenue funds are insufficient to implement the salary increases authorized in this subchapter or by any other law that affects salary increases for state employees, the Chief Fiscal Officer of the State upon approval by the Governor may reduce the percentage of all authorized salary increases for all state employees covered by this subchapter without regard to whether the employees are compensated from general or special revenues, federal funds or trust funds.
(Emphasis added.) The highlighted language would appear to include private funds otherwise available to a state-supported institution of higher learning to enhance salaries. I appreciate that an administrative agency's interpretation of statutes dealing with its operations will be upheld unless clearly wrong.See, e.g., ACW Inc. v. Weiss,329 Ark. 302, 947 S.W.2d 770 (1997). In the present case, Director Weiss has interpreted A.C.A. § 21-5-211(e)(1) as investing him, with the Governor's approval, with authority to impose an across-the-board freeze on salary increases under appropriate circumstances, including increases funded by private endowments — a conclusion a university board would be charged with refuting in the event of a legal challenge. Nevertheless, I believe such a challenge might well be upheld by a court.
In the present context, I believe nothing in amendment 33 prohibits the legislature from exercising reasonable control over the granting of public moneys to pay the salaries of nonclassified personnel at state-supported institutions of higher learning. Indeed, article 16, § 4 of the constitution mandates that the legislature exercise such control. In my opinion, amendment 33 might be implicated only if the legislature were to curtail public expenditures on salaries to an extent that *Page 9 
jeopardized the educational mission of the institution. But I have no information to suggest that this is the case in the present context.
Finally, I will note that if sufficient general revenues should become available at any time during the year to provide the maximum additional salary increases for all state employees without regard to the source of revenues, salary increases for state employees provided for in this subchapter or by any other law may be fully implemented by Mr. Weiss. The issue you have raised may consequently become moot, as it may already be because of the apparent concurrence of the affected institutions in the salary freeze.
Question 3: Are state-supported institutions of highereducation prohibited from giving any type of pay increase for fiscalyear 2011 for nonclassified employees, whether faculty ornonfaculty? If so, are pay increases legal that were given tocertain faculty, including pay increases for retention, before thedate of the Weiss memo [suspending pay increases]?
As reflected in the foregoing discussion, I believe the answer to the first question is "no," although the affected institutions have reportedly agreed to the freeze. As noted above, I question whether the Director's authority to impose a freeze under the UCCA extends to nonclassified employees of publicly funded institutions of higher education. Accordingly, I believe the pay increases referenced in your second question would be "legal."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] In support of these propositions, you cite Ark. Ops. Att'y Gen. Nos. 84-007 and 88-202. The latter opinion, however, is totally unrelated to the issue you have posed. I will address the propositions for which you maintain these opinions stand in the text of my discussion.
[2]
A.C.A. §§ 21-5-201 through-225 (Repl. 2004 Supp. 2009).
[3]
A.C.A. §§ 6-63-301 through-316 (Repl. 2004 Supp. 2009).
[4] See, e.g., A.C.A. §§ 6-63-303 (Repl. 2003) (capping the annual salary for any "nine-month educational and general academic position" at the maximum set "in the regular salaries section of the biennial operations appropriation act of any institution of higher education"); 6-63-305(a) (Supp. 2009) (providing that federal funds might be used to fund new classified or unclassified positions so long as the salaries "do not exceed the highest maximum annual salary rate or the highest grade level for any position authorized in the regular salary section of the requesting institution's appropriation act for operation, under the Uniform Classification and Compensation Act . . . or its successor"). The Code not only provides for caps on salaries paid from public funds but also provides for exceeding those caps under specified circumstances.See A.C.A. §§ 6-63-309 (Repl. 2003) (providing for state-supported institutions of higher education to exceed maximum salary levels using public funds up to 25% for no more than 10% of specified "positions authorized in its biennial operations appropriation act"); 6-62-103 (Repl. 2003) (providing that a state-supported college or university may, under specified circumstances, marshal its private resources to enhance the salaries of certain academic or nonacademic personnel).
[5] Section 21-5-219 in its current form provides for specified pay raises only for nonclassified employees of "a department, board, commission, and state agency." Subsection 21-5-301(23) (Supp. 2009) defines "state agencies" as comprising "all agencies, authorities, departments, boards, commissions, bureaus, council, or other agencies of the state supported by appropriation of state or federal funds, except those agencies excluded in § 21-5-204." As noted above, the excepted agencies no longer include institutions of higher education. As further noted above, however, it is highly questionable that A.C.A. § 21-5-219, which was enacted subsequent to the rest of the UCCA, should even be considered as subject to the other provisions of a subchapter that is elsewhere exclusively devoted to classified employees. See A.C.R.C. Note to A.C.A. § 21-5-219 (offering this conclusion). The amendment of Act 688 further suggests strongly that nonclassified employees of institutions of higher learning are not subject to the UCCA.
[6] Section 21-5-219(b) of the Code (Supp. 2009), as amended by Acts 2009, No. 688, § 12, provides as follows regarding the COLA for nonclassified state employees:
 The maximum rate of compensation for which a nonclassified employee is eligible on July 1, 2010, shall be determined by increasing the employee's June 30, 2010, salary by two and three tenths percent (2.3%).
The Memorandum fails to mention the 2% increase in salary authorized in A.C.A. § 21-5-219, enacted pursuant to Act 688, § 12, which provides in pertinent part:
 (c) An employee compensated with maximum annual salary rate as set out in dollars by law enacted by the General Assembly for a department, board, commission, or state agency is eligible to receive an additional salary increase of two percent (2%) each fiscal year, provided that the Chief Fiscal Officer of the State determines that sufficient general revenues become available.
 (d) A nonclassified employee compensated at the highest pay rate authorized for his or her position shall be eligible to receive the salary increase authorized in this section, but the increase shall be paid as a lump sum on the last pay period of the fiscal year of the year in which the increase is to occur.
The Director has not expressly frozen these increases by direct reference, but I understand, and the affected institutions appear to agree, that he has done so by virtue of his directive that "pay plans" will be frozen at the rate in effect in fiscal year 2010.
[7] Amendment 33, § 2 provides in pertinent part:
 The board or commission of any institution, governed by this amendment, shall not be abolished nor shall the powers vested in any such board or commission be transferred, unless the institution is abolished or consolidated with some other State institution.